## No. 2327
### Second Circuit Appeal

## HARRY L. EISEL v. CADDO TRANSFER AND WAREHOUSE COMPANY

(June 23, 1925, Opinion and Decree.)

---

(*Syllabus by the Editor.*)

1. Louisiana Digest—Master and Servant—Par. 160 (l).

The finding of the trial judge in a Workmen's Compensation case under Section 8, Subsection 1 (b) of Act No. 20 of 1914, as amended by Act 216 of

1924, that the injured employee was permanently, totally disabled to do work of any reasonable character being clearly correct, is affirmed.

2. **Louisiana Digest—Master and Servant— Par. 160 (I); Appeal—Par. 512.**

Where in a Workmen's Compensation case under Act No. 20 of 1914 the defendant did not give a suspensive appeal bond, the execution of the judgment was not stayed, and therefore, damages for frivolous appeal will not be allowed.

Appeal from First Judicial District Court of Louisiana, Parish of Caddo, Hon. T. F. Bell, Judge.

Judgment affirmed.

Long & Crow, of Shreveport, attorneys for plaintiff, appellee.

John B. Files, of Shreveport, attorney for defendant, appellant.

REYNOLDS, J. This is a suit under the Workmen's Compensation Act for compensation at the rate of $18 per week during disability not exceeding 400 weeks for an injury suffered by plaintiff on March 31, 1924, resulting from a fall of about nine feet in which plaintiff landed in a sitting position on a cement floor causing an injury close to the base of the brain and the lower part of the spine.

Defendant denied liability and alleged that it had paid plaintiff more than $200 and furnished him with medical attention.

On these issues the case was tried and judgment was rendered in favor of the plaintiff for $18 per week during disability, not to exceed 400 weeks, subject to a credit of $216, the first weekly payment to be due April 17, 1924, with legal interest on each payment from its maturity until paid. Defendant appealed.

OPINION.

The only dispute in this case is as to the extent of the injuries received by plaintiff.

Doctor J. D. Young testified, page 2:

"Q. What did you find as to his condition?

"A. After going over Mr. Eisel carefully, I find a condition that would indicate that Mr. Eisel had damage done to the motor side of his cord, at a level close to the base of the brain, caused from some injury."

(Page 3):

"Q. Do you know the nature of that injury?

"A. The nature of that injury, from my examination, would be an injury at the first and second cervical segment of the cord caused from traumatism.

"Q. Was there a fracture?

"A. Fracture and dislocation."

(Page 4:

"Q. Is the center of the nervous system destroyed on this man?

"A. Certain fibres of the motor tract are destroyed.

"Q. How long will you say that his improvement will continue?

"A. He has about reached the maximum improvement now. Usually six months after an accident of that type the patient reaches the maximum of improvement."

(Page 5):

"Q. Do you find flacit paralysis in this man?

"A. I find spactic paralysis.

"Q. Then your opinion is, from your examination, that the injuries will be permanent?

"A. My opinion is they will be permanent."

Plaintiff testified, page 3:

"Q. And they sent you to the North Louisiana Sanitarium, then?

"A. Yes, sir.

"Q How long did you stay in the Sanitarium then?

"A. About fifteen minutes.

"Q. What did they do with you then?

"A. Sent me home.

"Q. Where?

"A. 1549 Irving Place.

"Q. What did you do then?

"A. I went to bed and stayed until the next day at two o'clock and went back

for treatment and I kept that up for a period of about nine days and I couldn't make it the tenth day, so they made some pictures of the lower part of my spine, the tenth day, and found I was injured and they put me to bed to stay ten days with a brace on, and I had been in bed about three days when they come out and wanted me to get up and walk around and take exercise, said that was what I needed.

"Q. Who was waiting on you then?
"A. Dr. Abramson, he had charge of the case but Doctor Hargrove was the doctor coming to see me.
"Q. They were the company's physicians attending you?
"A. Yes, sir. ·

"Q All right, go ahead and state what happened. Did you go back to bed?
"A. I stayed in bed, I couldn't walk.

"Q. How long did you stay in bed after that?
"A. Well, I stayed in bed all the time. In fact I stayed there until, I believe, it was about the 10th or 12th week afterwards they called in Dr. Caldwell and he gave me an examination and had some more pictures made and—

"Q. Did they call in any other doctor?
"A. Dr. Young, and he found more trouble and had some more pictures made and I think they quit the case then, at least there hasn't been a doctor to see me since then, and they stopped my compensation three weeks before this however."

Defendant introduced no testimony whatever.

Plaintiff moves for damages as for frivolous appeal. But as the defendant, did not give a suspensive appeal bond the execution of the judgment was not stayed, and therefore damages for frivolous appeal will not be allowed.

In our opinion all of the evidence in the case fully warranted the judgment of the lower court.

It is therefore ordered, adjudged and decreed that the judgment of the lower court be affirmed.