No. 3337

**Second Circuit**

———

EISEL v. CADDO TRANSFER & WAREHOUSE CO.

———

(July 1, 1929. Opinion and Decree.)
(October 1, 1929. Rehearing Refused.)

———

Huey P. Long, of Baton Rouge, and R. J. Neal, of Shreveport, attorneys for plaintiff, appellant.

John B. Files, of Shreveport, attorney for defendant, appellee.

ODOM, J. The plaintiff was an employee of the defendant company, and while at his work in March, 1924, received accidental injuries which resulted in total disability to do work of a reasonable character. Failing to get a settlement, he brought suit under the Workmen's Compensation Acts, and on February 4, 1925, obtained judgment awarding him compensation for 400 weeks. The defendant appealed, and this court affirmed the judgment on June 30, 1925. Defendant paid all compensation due under the judgment up to December 31, 1927.

On February 28, 1928, plaintiff brought the present suit to have all future installments due under the judgment decreed to be immediately due and payable on the grounds that defendant had failed to pay six successive installments, as they became due, and that plaintiff is not adequately protected by insurance.

The defense is that these past-due installments were not paid because no demand was made by plaintiff, whose post office address was unknown to the defendant company, and "that whatever payments have been made have been in quarterly payments upon demand and to the attorney for plaintiff, and that a custom had been established for the making of said payments."

The district court rejected plaintiff's demands and dismissed his suit. He has appealed.

## OPINION.

The law is plain that if a defendant against whom a judgment for compensation has been rendered fails to pay six successive installments as they become due, "the installments not yet payable under said judgment shall immediately become due and exigible and the judgment shall become executory for the whole amount; provided, that if the employee or his dependent is adequately protected by insurance and receives payments thereunder this right shall not accrue." Section 33, Act No. 20 of 1914, as amended by Act No. 38 of 1918.

It is admitted that defendant had failed to pay more than six successive installments of the judgment in this case when the present suit was filed, and conceded that plaintiff is not adequately protected by insurance. While the testimony shows that plaintiff did not personally call at the office of defendant and demand that these payments be made to him, yet it is shown that demand was made at defendant's office and over telephone by plaintiff's attorneys, and that the demands were refused.

At the time of the trial of this case and for some time prior thereto, plaintiff was absent from the state and all payments had been made to his attorneys in Shreveport, which seems to have been satisfactory with him. It is true, as alleged and now contended by defendant, that plaintiff had by custom and acquiescence waived his rights under the statute to be paid

regularly each week. In the year 1927, for instance, plaintiff was paid through his attorneys $270 on January 17th, or for 15 installments; on March 29th, $216; June 23d, $252; September 15th, $234; and on December 21st, $216—these payments covering, in the aggregate, all installments due up to December 31st of that year. During that year, however, the attorneys wrote defendant that plaintiff was demanding that his payments be made each week, and the attorneys testified that they had personally talked with Mr. Johnson, president of the defendant company, and asked him to be prompt in making settlements, and Johnson admits that. However, after the letter was written and after these personal complaints were registered, plaintiff's attorneys continued to accept payments in lump sums at long intervals. At the time this suit was filed, there were ten weekly payments admittedly due, and counsel for defendant argues with force that it would be wholly inequitable to permit plaintiff to take snap judgment against it and have all unpaid installments under the judgment decreed immediately payable, in view of the custom which had prevailed and acquiesced in, though reluctantly, by plaintiff. This argument seems to have appealed to our brother of the district bench who rejected plaintiff's demands. But, whatever merit there may be in defendant's contention, and from an equitable standpoint it has great force, the fact which is decisive of the point at issue and on which we rest our decision is that, after more than six successive payments were due under the judgment, demand was made for payment and the demand was refused; the reason given being that defendant had concluded to cease payments altogether.

Early in January, 1928, shortly after defendant made its final payment for 1927, Mr. Johnson, president of the defendant company, made a trip to College Point, Tex., where plaintiff was then residing, to ascertain whether plaintiff had regained his health and was then able to earn wages, with the view, it seems, of having the judgment set aside or the payments reduced, as the facts might warrant. He saw plaintiff on January 10th, came back to Shreveport, and, after consulting his attorney, it was decided that no more payments would be made under the judgment. This conclusion was reached prior to the date on which the present suit was filed, and was communicated to the attorneys for plaintiff.

Mr. Johnson, in the course of his examination as a witness, was asked when he saw plaintiff, and he said on January 10, 1928. He was then asked:

"That was about the time that you concluded not to pay him any more?"

And he answered:

"Well, I did not fully conclude until I came back and discussed the matter with my attorney, about the time your suit was brought."

And he was asked:

"A day or two before the suit was brought, you let it be understood that you had decided you were not going to pay any more?"

And he said:

"Yes, sir, I think so."

Mr. Johnson said, however, that no demand was made for past-due installments until the filing of the present suit. But Mr. McSween testified that he had made demand, and Mr. Long said:

"Finally, when I got through with my campaign, which was about the 20th of

January, 1928, I undertook to collect the money which I needed, and finally I was informed, as Mr. McSween testified on the stand, that he had decided to discontinue paying and I filed suit after they had not paid for eleven weeks."

Even if it be conceded that the attorneys are mistaken as to the making of demand, that would not make the case any better for defendant, because it had let it become known, according to Johnson's own testimony, that no more payments would be made, so that to make a demand would have been a vain and idle thing. But Mr. Johnson says he had reference to future payments and not to those already due. He says, however, that he knew defendant was in arrears but did not know the exact number of weeks. But, after it was decided to cease payments, no offer was made to pay the installments already accrued, and, when this suit was filed, no tender of the amount was made and none was ever made.

In the case of Mason vs. Costanza, 166 La. 323, 117 So. 240, the court held that the failure to pay six successive installments of a workman's compensation under a judgment must be considered in the nature of a forfeiture, and that forfeitures are not favored in law nor encouraged by courts. It was further held that the employer had a right to make payments at its place of business, and that where the employee failed to call for his payments, after being requested to do so, he could not have all subsequent payments decreed due and payable, even though more than six installments were due. But the facts of that case clearly distinguish it from the case at bar. There the employer was always willing to pay and repeatedly requested the employee to call at its place of business for his weekly settlements, which he failed and refused to do. Here, defendant never at any time demanded that plaintiff call at its office for settlement. The suit is not defended on that ground. Mr. Johnson was asked:

"You never raised any point about wanting Eisel to come there and demand the money or anything, like that?"

And he said:

"No, sir."

Unlike the case cited supra, counsel for plaintiff went to the office of defendant, after telephoning, and made demand, which was refused, and not only that, the attorney was told that the defendant had concluded not to pay. It was then that his suit was filed. Even though forfeitures are not favored in law and courts should not and do not encourage litigants to claim them, yet a litigant should not complain when his adversary calls upon him to lie on a couch which he has made down for himself. In cases under the Compensation Law, where an employer has been condemned by final judgment to pay an employee weekly compensation and subsequently repudiates the obligation by refusing to pay on demand, the forfeiture must be declared when demanded under the plain letter of the law. Section 33, Act No. 20 of 1914, as amended by Act No. 38 of 1918.

For the reasons assigned, it is ordered and decreed that the judgment appealed from be reversed; and it is now ordered, adjudged, and decreed that all installments due after January 1, 1928, under that certain judgment rendered in the case of Harry L. Eisel vs. Caddo Transfer & Warehouse Co., 2 La. App. 533, No. 37,875 in the First District Court of Caddo Parish, at No. 2327 of this Court, be decreed to be immediately due and exigible, and that this judgment become executory for the whole amount with interest on the payments as the law provides; and that defendant pay all costs.